**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PROOFPOINT, INC., <br> Plaintiff, <br> v. <br> BTM COMERCIO DE EQUIPAMENTOS E SOFTWARES DE INFORMATICA, et al., <br> Defendants. | Case No. 17-cv-06065-BLF <br><br> **ORDER GRANTING PLAINTIFF'S UNOPPOSED ADMINISTRATIVE MOTION TO SEAL** <br><br> [Re: ECF 48] |

Before the Court is Plaintiff Proofpoint, Inc.'s ("Proofpoint") motion to file under seal portions of its opposition to Defendants' motion to dismiss, or alternatively to stay, and supporting materials. ECF 48. The motion is unopposed. For the reasons discussed below, the Court GRANTS Proofpoint's motion to seal.

**I.  LEGAL STANDARD**

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7 (1978)). Accordingly, when considering a sealing request, "a 'strong presumption in favor of access' is the starting point." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action" bear the burden of overcoming the presumption with "compelling reasons" that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1178–79.

However, "while protecting the public's interest in access to the courts, we must remain mindful of the parties' right to access those same courts upon terms which will not unduly harm

their competitive interest." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1228–29 (Fed. Cir. 2013). Records attached to motions that are "not related, or only tangentially related, to the merits of a case" therefore are not subject to the strong presumption of access. *Ctr. for Auto Safety*, 809 F.3d at 1099; *see also Kamakana*, 447 F.3d at 1179 ("[T]he public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action."). Parties moving to seal the documents attached to such motions must meet the lower "good cause" standard of Rule 26(c). *Kamakana*, 447 F.3d at 1179 (internal quotations and citations omitted). This standard requires a "particularized showing," *id.*, that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). A protective order sealing the documents during discovery may reflect the court's previous determination that good cause exists to keep the documents sealed, *see Kamakana,* 447 F.3d at 1179–80, but a blanket protective order that allows the parties to designate confidential documents does not provide sufficient judicial scrutiny to determine whether each particular document should remain sealed. *See* Civ. L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.").

In addition to making particularized showings of good cause, parties moving to seal documents must comply with the procedures established by Civ. L.R. 79-5. Pursuant to Civ. L.R. 79-5(b), a sealing order is appropriate only upon a request that establishes the document is "sealable," or "privileged or protectable as a trade secret or otherwise entitled to protection under the law." "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)." Civ. L.R. 79-5(b). In part, Civ. L.R. 79-5(d) requires the submitting party to attach a "proposed order that is narrowly tailored to seal only the sealable material" which "lists in table format each document or portion thereof that is sought to be sealed," Civ. L.R. 79-5(d)(1)(b), and an "unredacted version of the document" that indicates "by

2

1 highlighting or other clear method, the portions of the document that have been omitted from the redacted version." Civ. L.R. 79-5(d)(1)(d). "Within 4 days of the filing of the Administrative Motion to File Under Seal, the Designating Party must file a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable." Civ. L.R. 79-5(e)(1).

**II. DISCUSSION**

Because Proofpoint's sealing motion relates to a motion to dismiss a complaint, which is more than tangentially related to the merits of the case, the instant motion is resolved under the compelling reasons standard. The Court has reviewed Proofpoint's sealing motion and the declaration of Michael Yang in support thereof. *See* ECF 50 ("Yang Decl."). The Court also notes that Defendants have stipulated to the proposed redactions. *See* ECF 48-1.

According to the Yang declaration, some of the documents relied on in the opposition and attached as exhibits contain confidential and commercially sensitive information regarding Proofpoint's contracts with Defendants. Yang Decl. ¶ 18. Yang represents that Proofpoint's distributor and reseller contracts are confidential and proprietary to Proofpoint and are not publicly available. *Id.* Proofpoint also seeks to seal additional exhibits attached to the Declaration of David Ho. *See* ECF 59. Proofpoint requests a narrowly tailored redaction of these exhibits to remove contact information of current and former Proofpoint employees, such as email addresses and telephone numbers, as well as confidential pricing information negotiated between Proofpoint and its channel partners. Yang Decl. ¶¶ 19-20. In addition, Proofpoint moves to file under seal the Declaration of Craig Hirst, and portions of Proofpoint's Opposition brief that rely on and paraphrase the Hirst Declaration, because Mr. Hirst describes Proofpoint's confidential and proprietary information that, if publicly disclosed, could cause substantial harm to Proofpoint's competitive advantage. *Id.* ¶ 21.

The Court finds that Proofpoint has articulated compelling reasons to seal the requested portions of the opposition and supporting materials. The proposed redactions are also narrowly tailored to exclude only sealable material. The Court's rulings on the sealing motion are set forth in the table below:

3

| ECF No. | Document to be Sealed | Result | Reasoning |
|---|---|---|---|
| 50-1 | Yang Declaration, Exhibit 1: Indirect Reseller Agreement between BTM and Proofpoint | GRANTED. | The entire exhibit contains highly confidential information on Proofpoint's reseller contract with BTM, which is confidential, proprietary to Proofpoint, not publicly available, and the disclosure of which would cause competitive and business harm to Proofpoint, a leading provider of cybersecurity solutions to enterprises around the world. Yang Decl. ¶ 18, ECF 50. |
| 50-1 | Yang Declaration, Exhibit 2: Indirect Reseller Agreement between Sybex and Proofpoint | GRANTED. | The entire exhibit contains highly confidential information on Proofpoint's reseller contract with Sybex, which is confidential, proprietary to Proofpoint, not publicly available, and the disclosure of which would cause competitive and business harm to Proofpoint, a leading provider of cybersecurity solutions to enterprises around the world. Yang Decl. ¶ 18. |
| 50-1 | Yang Declaration, Exhibit 3: Limited International Reseller Agreement between Synus and Proofpoint | GRANTED. | The entire exhibit contains highly confidential information on Proofpoint's reseller contract with Synus, which is confidential, proprietary to Proofpoint, not publicly available, and the disclosure of which would cause competitive and business harm to Proofpoint, a leading provider of cybersecurity solutions to enterprises around the world. Yang Decl. ¶ 18. |
| 50-1 | Yang Declaration, Exhibit 4: Direct Reseller Agreement between BBCenter and Proofpoint | GRANTED. | The entire exhibit contains highly confidential information on Proofpoint's reseller contract with BBCenter, which is confidential, proprietary to Proofpoint, not publicly available, and the disclosure of which would cause competitive and business harm to Proofpoint, a leading provider of cybersecurity solutions to enterprises around the world. Yang Decl. ¶ 18. |
| 50-1 | Yang Declaration, Exhibit 5: Hosted Service Provider Agreement between BTM and Proofpoint | GRANTED. | The entire exhibit contains highly confidential information on Proofpoint's hosted service provide agreement with BTM, which is confidential, proprietary to Proofpoint, not publicly available, and the disclosure of which would cause competitive and business harm to Proofpoint, a leading provider of cybersecurity solutions to enterprises around the world. Yang Decl. ¶ 18. |

| 59 | Ho Declaration, Exhibit 13: October 5, 2015 email chain between Charles Drehmer and Proofpoint representative titled "Re: PO #70 #71 – BTM," with attachments | GRANTED as to the highlighted portions. | The redacted portions of the exhibit contain contact information of current and former Proofpoint employees, such as emails and telephone numbers. Yang Decl. ¶ 19. Proofpoint's cybersecurity solutions protect its customers from attacks perpetrated by third party bad actors who often use personal information to refine and enhance their cyberattacks and to fraudulently induce victims into harmful communications and transactions. *Id*. As such, Proofpoint has a vested interest in limiting unnecessary public access to personal information in order to limit the ability of bad actors to misuse such information. *Id*. Exhibit 13 also contains sensitive, confidential pricing information negotiated between Proofpoint and its channel partners, disclosure of which would cause business harm to Proofpoint. *Id*. ¶ 20. |
|---|---|---|---|
| 57 | Hirst Declaration | GRANTED. | The entire Hirst Declaration contains highly confidential information describing the inner workings, process, and timing of how Proofpoint deploys a cluster for its end users. Yang Decl. ¶ 21. This information is confidential and proprietary to Proofpoint and, if publicly disclosed, could cause substantial harm to Proofpoint's competitive marketing advantage. *Id*. |
| 55 | Proofpoint's Brief in Opposition to Motion to Dismiss | GRANTED as to highlighted portions at page 6, line 22 through page 7 line 13. | The redacted portions of Proofpoint's opposition describe in detail the technology involved in this dispute, which is highly sensitive commercial information regarding the timing of how Proofpoint deploys a cluster for its end users, as described in the Hirst Declaration (ECF 57). If disclosed, this information could cause business harm to Proofpoint. Yang Decl. ¶¶ 21. |

For the foregoing reasons, the sealing motion at ECF 48 is GRANTED.

**IT IS SO ORDERED.**

Dated: March 26, 2018

_____
BETH LABSON FREEMAN
United States District Judge

5